UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUXSHARE, LTD.,

                Petitioner,

v.

ZF AUTOMOTIVE US, INC.,
GERALD DEKKER, and
CHRISTOPHE MARNAT,

                Respondents.

                                  /

Case No. 2:20-mc-51245

District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER GRANTING IN PART and DENYING IN PART RESPONDENTS' MOTION TO QUASH IMPROPER SUBPOENAS (ECF NO. 6)

## I.    OPINION

### A.    Petitioner's *Ex Parte* Application

Petitioner Luxshare, Ltd. has filed an *Ex Parte* Application For An Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. (ECF No. 1.) Section 1782 concerns "[a]ssistance to foreign and international tribunals and to litigants before such tribunals." 28 U.S.C. § 1782. Of importance to the matter currently before the Court are Luxshare's subpoenas to ZF Automotive US, Inc. ("ZF US"), Gerald Dekker, and Christophe Marnat (collectively "Respondents"). (ECF Nos. 1-2, 1-3, 1-4.)

On October 22, 2020, Judge Michelson entered an order granting Luxshare's *ex parte* application. (ECF No. 3.) In so doing, the Court permitted Luxshare "to obtain discovery for use in foreign proceedings from ZF Automotive US, Inc., Gerald Dekker, and Christophe Marnat ("Respondents") by way of subpoenas that are (1) served in accordance with the Federal Rules of Civil Procedure and this Court's local rules; and (2) substantially in the form of the proposed subpoenas attached hereto as Exhibits 1-3." (*Id*., PageID.165.)

### B.  Respondents' Motion to Quash

Currently before the Court is Respondents' December 4, 2020 motion to quash improper subpoenas. (ECF No. 6.) Luxshare has filed a response (ECF No. 13), Respondents have filed a reply (ECF No. 14), and the parties have filed a joint statement of unresolved issues (ECF No. 15).

Judge Michelson referred this case to me for pretrial matters, and, ultimately, a hearing was held on February 24, 2021, at which counsel for Luxshare (Bradley Pensyl, Kendall Robert Pauley, Michael G. Brady, and Anna Masser) and Respondents (Herbert C. Donovan, Sean Berkowitz, Alena McCorkle, and Christoph Baus) appeared. (ECF Nos. 8, 10.) The Court entertained oral argument on the motion, ordered additional briefing, and took the matter under advisement. (ECF No. 25 [Revised Transcript].)

### C.  Discussion

1.      **Legal Framework:  A Two Step Inquiry**

a.      **Statutory Factors/Requirements**

The present *ex parte* application is governed by 28 U.S.C. 1782(a), which

reads as follows:

> The district court of the district in which a person resides or is found
> may order him to give his testimony or statement or to produce a
> document or other thing for use in a proceeding in a foreign or
> international tribunal, including criminal investigations conducted
> before formal accusation. The order may be made pursuant to a letter
> rogatory issued, or request made, by a foreign or international tribunal
> or upon the application of any interested person and may direct that
> the testimony or statement be given, or the document or other thing be
> produced, before a person appointed by the court. By virtue of his
> appointment, the person appointed has power to administer any
> necessary oath and take the testimony or statement. The order may
> prescribe the practice and procedure, which may be in whole or part
> the practice and procedure of the foreign country or the international
> tribunal, for taking the testimony or statement or producing the
> document or other thing. To the extent that the order does not
> prescribe otherwise, the testimony or statement shall be taken, and the
> document or other thing produced, in accordance with the Federal
> Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or
> to produce a document or other thing in violation of any legally
> applicable privilege.

As one court has summarized these threshold requirements for exercising authority

under the statute:

> A district court has the authority to grant an application for judicial
> assistance if the following statutory requirements in § 1782(a) are
> met: (1) the request must be made "by a foreign or international
> tribunal," or by "any interested person"; (2) the request must seek
> evidence, whether it be the "testimony or statement" of a person or the

production of "a document or other thing"; (3) the evidence must be
"for use in a proceeding in a foreign or international tribunal"; and (4)
the person from whom discovery is sought must reside or be found in
the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007); *see also Bey v. Resurgent*

*Mort. Serv'g*, No. 14-51040, 2014 WL 5512663, at *2 (E.D. Mich. Oct. 31, 2014)

(Drain, J.).

If all the statutory requirements are met, § 1782 then "authorizes, but does

not require, a federal district court to provide assistance." *Intel Corp. v. Advanced*

*Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). In ruling on such an application, "a

district court must first consider the statutory requirements and then use its

discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutche*

*Industriebank*, 673 F.3d 76, 80 (2d Cir. 2012). Put another way, a § 1782

application "presents two inquiries, first, whether the district court is authorized to

grant the request; and second, if so, whether the district court should exercise its

discretion to do so." Buchwalter*, Annotation*, *Construction and Application of 28*

*U.S.C.A. § 1782, Permitting Federal District Court to Order Discovery for Use in*

*Proceeding in Foreign or International Tribunal*, 56 A.L.R. Fed.2d 307, § 2

(2011). If the court concludes that any of the statutory requirements are not met,

thus depriving it of the authority to grant relief under the statute, the inquiry ends

there; however, if the statutory requirements are met, the court goes on to consider

the discretionary factors. Importantly, "the district court is not required to grant a

§ 1782(a) discovery application simply because it has the authority to do so." *Intel Corp.*, 542 U.S. at 264 (citing *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001)). "Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein, Liebhard & Lifshitz*, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (internal citations omitted). In exercising this discretion, the court takes "into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Certain Funds, Accounts and/or Investment Vehicles v. KPMG*, L.L.P. et. al., 798 F.3d 113, 117 (2d Cir. 2015) (quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)).

### b.    Discretionary Factors

The leading and controlling authority is supplied by the Supreme Court's decision in *Intel*, where Justice Ginsburg, writing for the majority, identified "factors that bear consideration in ruling on a § 1782(a) request." *Intel Corp.*, 542 U.S. at 264. These factors are consistently introduced by discretionary language, such as "may take into consideration[,]" "could consider[,]" and "may be rejected or trimmed." *Id*. at 264-265. As applied to the present application for discovery, the factors that "bear consideration" are:  (1) Whether ZF Automotive US, Inc., Gerald Dekker, and Christophe Marnat are participants in the foreign

5

proceeding(s); (2) the nature of the foreign tribunal(s), including (a) the character of the proceedings underway abroad and (b) the receptivity of the foreign government or tribunal to judicial assistance from United States federal courts; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or of the United States; and, (4) whether the requests are unduly intrusive, and, if so, whether they ought to be "rejected or trimmed." *Id*. at 265.

### 2. Whether Petitioner's requested discovery meets Section 1782's statutory requirements?

Luxshare seeks § 1782 discovery in connection with a prospective arbitration to be filed against ZF US in Germany. (ECF No. 1, PageID.9; ECF No. 1-6, PageID.87, ¶ 1.) Respondents contend that "[t]he requested Section 1782 discovery is not 'for use' in the prospective German arbitration[.]" (ECF No. 6, PageID.232-234.) At the hearing, with *Certain Funds* and *In re Sargeant*, 278 F. Supp. 3d 814, 824 (S.D.N.Y. 2017) in mind, Respondents argued that "1782 should not be used as a means of discovering whether you have a case." (ECF No. 25, PageID.573.) True; however, the Supreme Court has directed that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings[,]" and that "§ 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be *within reasonable contemplation*." *Intel Corp.*, 542 U.S. at 258-259 (emphasis added). *Compare*

*Certain Funds,* 798 F.3d at 124 (affirming district court's denial of Section 1782 application where, "at the time the evidence was sought in this case, the Funds had done little to make an objective showing that the planned proceedings were within reasonable contemplation."); *In re Sargeant*, 278 F. Supp. 3d at 823-824 (denying application where "the Section 1782 Application [wa]s bereft of even the broadest contours of what the possible proceeding(s) in the United Kingdom or the Isle of Man may entail—they [we]re entirely embryonic.").

Having reviewed the parties' arguments and submissions on this issue (ECF No. 13, PageID.331-337; ECF No. 14, PageID.378-380), the Court concludes that Petitioner has met the statutory requirements of § 1782. Preliminarily, Luxshare addressed the "for use" requirement in its application, ultimately asserting that the Application "has set forth a sufficient basis that meets and exceeds the reasonable contemplation standard." (*See* ECF No. 1, PageID.25-27; *see also* ECF No. 3.) Moreover:

- while the Supreme Court has recently granted a petition for certiorari in *Servotronics, Inc. v. Rolls-Royce PLC*, No. 20-794, 2021 WL 1072280 (Mar. 22, 2021) on the issue of "[w]hether the discretion granted to district courts in 28 U.S.C. § 1782(a) to render assistance in gathering evidence for use in 'a foreign or international tribunal' encompasses private commercial arbitral tribunals[,]" 2020 WL 7343172, this Court is currently bound by *In re Application to Obtain Discovery for Use in Foreign Proc. (Abdul Latif Jameel Transportation Company Limited, Movant-Appellant, v. FedEx Corporation, Respondent-Appellee.)*, 939 F.3d 710, 730 (6th Cir. 2019), which found that it does (*See also* ECF No. 25, PageID.557-558);

- "the word 'tribunal' in § 1782(a) encompasses private, contracted-for commercial arbitrations of the type at issue here[,]" *Abdul*, 939 F.3d at 730;

- Respondents agree that Luxshare has until the end of 2021 to file the arbitration (*See* ECF No. 25, PageID.558; *see also id.*, PageID.583-584, 590);

- when confronted about waiting to see what the DIS Arbitration tribunal ("DIS") – *i.e.*, the German Arbitration Institute (https://www.disarb.org/en) – actually wants, Luxshare explained, *inter alia*, that the Court need not wait to see what DIS is going to do, because "the Panel has the authority to admit evidence as it sees fit[,]" and it is "in the best position to make those evidentiary determinations[,]" (ECF No. 25, PageID.580-581, 588-589);

- Luxshare provided David Huang's declaration, which reflects that Luxshare retained counsel – Allen & Overy LLP, a law firm with offices around the world (https://www.allenovery.com/en-gb/global/global_coverage) – in July 2020 "to represent [it] in this matter and prepare the Request for Arbitration," which Luxshare "plans to file with the German Institution of Arbitration ev. (DIS) in Munich, Germany[,]" (ECF No. 1-5, PageID.84 ¶ 21).[1]

The only statutory factor that Respondents question in their motion is the requirement that the requested evidence or testimony be for use in foreign

---

[1] *Compare financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 725, 729-732 (E.D. Mich. 2018) (Patti, M.J.) ("the German court had dismissed the test case after finding that there was no viable claim," and the statutory factors / requirements had not been met, in part because "the documents in question will not be 'usable' and, therefore, not 'for use' in these foreign proceedings."). In fact, the Court mentioned some of the differences between this case and *financialright GmbH* during the February 24, 2021 hearing. (ECF No. 25, PageID.560-561, 564, 566, 575.)

proceedings, because the arbitration has yet to be filed.  (ECF No. 6, PageID.232-234.)  In other words, they attack the notion that the DIS arbitration is "within reasonable contemplation."  The Court is well satisfied, on this record, that it is.

### 3. Whether the first three discretionary *Intel* factors favor granting Respondents' motion to quash?

Respondents and Luxshare are also at odds as to whether the discretionary *Intel* factors weigh in favor of granting the motion to quash in its entirety, denying it outright, or circumscribing the requested discovery.  (*Compare*, ECF No. 6, PageID.235-248, *and* ECF No. 14, PageID.375-378, *with* ECF No. 13, PageID.338-350.)  For the reasons that follow, the Court concludes that the requested discovery should be permitted, but circumscribed.

### a. Participant

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel Corp.*, 542 U.S. at 264.  "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Id*.  "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id*.

As noted above, Luxshare has issued subpoenas to ZF US, Gerald Dekker, and Christophe Marnat. (ECF Nos. 1-2, 1-3, 1-4.) While Respondents contend that ZF US would "would be a party in any potential DIS arbitration[,]" Luxshare notes that "respondents Dekker and Marnat are [or, more accurately, would be] non-parties[,]" much of which was also confirmed at oral argument. (ECF No. 6, PageID.235-238; ECF No. 13, PageID.340-341; ECF No. 14, PageID.377-378; ECF No. 25, PageID.591-592.) Luxshare also has no reason to challenge Respondents' claim that Dekker and Marnat have none of the documents for which they were subpoenaed, as these are maintained by ZF US, making at least that issue a moot point. (ECF No. 25, PageID.592-593.) In light of all this, the Court views the question of who will be a participant in the DIS arbitration as a mixed factor, which warrants permitting some discovery as to the non-participants (Respondents Dekker and Marnat) but curtailing discovery as to the intended participant (Respondent ZF US). Moreover, the DIS Arbitration tribunal can always say that more should be required or produced by the participants, as the 2018 DIS Arbitration Rules related to "Establishing the Facts," namely Articles 28.1 and 28.2, do not restrict evidence gathering; in fact, Article 28.2 provides that the tribunal "may, *inter alia*, on its own initiative, appoint experts, examine fact witnesses other than those called by the parties, *and order any party to produce or make available any documents or electronically stored data*." (*See* ECF No. 6-2,

PageID.280-281 (emphasis added); *see also* ECF No. 25, PageID.568-569, 588-589.)  Additionally, even the expedited proceedings rules which would apply to this arbitration provide that, "[i]f the final award cannot be made within the time limit set in Article 1 of this Annex, the arbitral tribunal shall inform the parties and the DIS in writing of the reasons therefor[e]."  (ECF No. 6-2, PageID.291, Art. 4.) As pointed out by Respondents at oral argument, "[T]hat contemplates…a situation where the arbitral tribunal believe[s] that there are some important facts that they want or need."  (ECF No. 25, PageID.568.)

### b.    Receptivity

"[A] court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel Corp.*, 542 U.S. at 264.  When the Court ordered supplemental briefing, it asked the parties to discuss "how a foreign arbitration tribunal is treated under the receptivity prong . . . ."  (ECF No. 25, PageID.600.)

The nature of the foreign tribunal and the character of the proceedings underway abroad are a yet to be filed arbitration before DIS, which, as alluded to above, is a private arbitration tribunal to which the parties agreed to submit any disputes under the Master Purchase Agreement (MPA).  (ECF No. 6-2, PageID.266

[20.10.2 <u>Arbitration</u>.].)  As for DIS's receptivity to U.S. federal-court judicial assistance, Respondents and Luxshare are at odds.  (*See* ECF No. 6, PageID.238-243; ECF No. 13, PageID.341-345; ECF No. 14, PageID.376-377.)

The 2018 DIS Arbitration Rules are important, not only for what they say but also for what they do not say.  (ECF No. 6-2, PageID.267-298.)  Importantly, as noted above, the 2018 DIS Arbitration Rules related to "Establishing the Facts," namely Articles 28.1 and 28.2, do not restrict evidence gathering.  (*See* ECF No. 6-2, PageID.280-281; *see also* ECF No. 25, PageID.568-569, 588-589.)

Respondents contend that "[c]ourts will quash subpoenas where an arbitral panel appears unreceptive to § 1782 discovery[.]"  (ECF No. 18, PageID.453-456.) *See*, *e.g.*, *In re Dubey*, 949 F. Supp. 2d 990, 997 (C.D. Cal. 2013) ("there is currently no evidence about the arbitral panel's receptivity to the requested materials.").  However, Luxshare notes that "[d]istrict courts consistently grant § 1782 assistance to applicants for use in foreign arbitrations where, like here, the respondents provide no authoritative proof that the tribunal would reject the evidence[,]" and points to, *inter alia*, Respondents' admission at the hearing that "the DIS rules do not contain an explicit restriction on the collection of evidence[.]"  (ECF No. 25, PageID.572 at 22:8–12; ECF No. 19, PageID.479.) *See*, *e.g., Gov't of Ghana v. ProEnergy Servs. LLC*, No. 11-9002-MC-SOW, 2011 WL 2652755, at *4 (W.D. Mo. June 6, 2011) ("The intervening party, Balkan, has

not provided the Court with reliable evidence of non-receptivity in this case.  Even if Balkan could produce reliable evidence that the arbitration tribunal would reject the evidence, Balkan has not provided the Court with reliable evidence that the High Court of Ghana would reject the evidence.").  Without authoritative proof that the DIS would *reject* Section 1782 discovery, and given Masser's declaration that "German Courts Admit Evidence Obtained By Way Of U.S. Discovery Applications[,]" (ECF No. 13-2, PageID.359-362 ¶¶ 17-23) and the above-cited DIS Rules, the Undersigned assumes that the DIS *would* receive it if it were obtained and presented.  (*See also* ECF No. 13, PageID.342, 344.)

In sum, while DIS does not provide a generous ration of discovery, it appears *receptive* to whatever evidence a party wants to put in front of it, and it does not impede proof-gathering.

In addition to the DIS Arbitration Rules not prohibiting Section 1782 discovery, Section 1782 is an independent statute; it is not beholden to the DIS Arbitration Rules (ECF No. 6-2, PageID.267-298).  "[Section 1782](#) is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Intel Corp.*, 542 U.S. at 263; *see also Abdul*, 939 F.3d at 729 (when comparing the breadth of Section 1782(a) discovery to Federal Arbitration Act discovery, the court "decline[d] to conclude that simply because similar discovery devices may

not be available in domestic private arbitration, § 1782(a) categorically does not apply to foreign or international private arbitration.").

### c.    Circumvention

"[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265.  Respondents argue that Luxshare's application is an "end-run" around the DIS's "more restrictive discovery rules . . . [,]" while Luxshare contends that it "is not circumventing proof-gathering prohibitions[.]"  (ECF No. 6, PageID.243-245; ECF No. 13, PageID.345-349; ECF No. 14, PageID.375-376.)

The Court views circumvention as a mixed factor here.  Respondents offer the declaration of Christoph A. Baus to support the assertion that "U.S.-style document discovery, with expansive categorial document requests, is . . . foreign to German civil procedure."  (ECF No. 6-2, PageID.256-258.)  This Court has previously made the same observation.  *See financialright*, 294 F. Supp. 3d at 736-737.  But most foreign legal systems do not embrace the broad form, style, and scope of American civil discovery.  *See* Marcus, Ricard L., *Retooling American Discovery for the Twenty-First Century: Toward a New World Order?*, 7 Tul. J. Int'l & Comp. L. 153, 154 (1999) ("Whatever the ulterior motives elsewhere, it is clear that America's 'unique' discovery has raised hackles abroad.")  Indeed, "[t]he

Restatement (and in turn, the Supreme Court) also assumed a basic comparative point: that American discovery laws are far broader than, and in constant tension with, the vast majority of other nations' discovery systems." Simowitz, Aaron D., *Transnational Enforcement Discovery*, 83 Fordham L. Rev. 3293, 3322 (2015). Indeed, Luxshare's own counsel acknowledged that he does not "know of any other court that has U.S.-style depositions." (ECF No. 25, PageID.591.) The inquiry can hardly end on that basis alone. Even if there is limited proof-gathering under the foreign arbitration rules (*i.e.*, even if the foreign arbitration does not adopt U.S.-style litigation), Luxshare has offered the declaration of Masser, who touches upon receptivity in Germany in particular and asserts that "German courts are nevertheless receptive to admitting evidence obtained by pre-trial discovery in other jurisdictions, including the U.S." (ECF No. 13-2, PageID.359 ¶ 17.) Presumably offered under Fed. R. Civ. P. 44.1 as a witness to prove foreign law, Masser (a member of the international law firm hired to represent Luxshare in connection with contemplated arbitration proceedings and who is qualified to practice in Germany (ECF No. 1-6, PageID.87, ¶ 1)) painstakingly explains:[2]

> 18. As a general principle of German law, German courts should exclude evidence only in exceptional circumstances. ****For instance, German courts must not *per se* dismiss evidence that was obtained in violation of provisions of the CCP but must assess its admissibility on a case by case basis, balancing the interests at stake.

---

[2] Quoted in substantive part only, for ease on the reader, with supporting citations to German law omitted, as indicated by asterisks.

****With regard to evidence obtained in the course of a foreign procedure, a court should refrain from admitting the evidence only if admitting the evidence were to violate German public policy. ****

19.     The fact that evidence obtained in the course of a foreign proceeding could not have been obtained through the means of German civil procedure does not render the evidence inadmissible. ****Rather, a violation of German public policy requires extreme circumstances, *e.g.*, that the evidence was obtained by torture or that admitting the evidence amounted to a violation of a fundamental right. ****

20.     In contrast to those examples, German scholars agree that admitting evidence obtained by way of a 1782 application does not generally violate German public policy. ****The prevailing view is that Courts should admit evidence obtained by way of U.S. discovery generously since excluding any evidence obtained by way of U.S. discovery *per se* would violate the right to effective legal protection and the right to be heard, which are both granted by the German constitution and incorporated in the CCP. ****Therefore, Eschenfelder concludes that the exclusion of evidence obtained in a 1782 application is "hard to imagine" and will be "only rare". ****

21.     German state courts indeed admit evidence obtained by way of discovery applications in the U.S. For example, in a judgment, the Higher Regional Court of Frankfurt am Main admitted evidence obtained by way of Section 1782 discovery proceedings under U.S. law. The court in that case held that it had "no concerns" about the introduction of such evidence and that use of such evidence in no way contravenes "fundamental principles of German law". ****

22.     In two further decisions by Higher Regional Courts in Germany the issue was whether the costs of the discovery applications were to be reimbursed in the German proceedings. **** While both of the courts held that the costs were nonrefundable in the specific circumstances, neither of the two took an issue with the fact that the evidence obtained by way of the discovery apparently had been admitted into the proceedings in the first place.

23.     If German state courts *may* admit evidence obtained by way of 1782 applications in state court proceedings, and they actually *do admit it*, there is even less reason for an arbitral tribunal seated in Germany to refrain from admitting evidence obtained by way of 1782 applications <u>given that arbitral tribunals have broader discretion to establish the facts of a case than state courts</u>.

(*Id*., PageID. 359-362 ¶¶ 18-23 (emphases in original, except for underscoring in ¶ 23).)  As put forth at the hearing, even Respondents seem to agree that Section 1782 discovery is *not prohibited* under German law or by DIS Rules.  (ECF No. 25, PageID.571.)

However, the discussion of "strategy" within the motion papers and at the hearing is not helpful to Luxshare's cause.  In their motion, Respondents argue: "More than raising a 'specter' or 'perception' that it is trying to circumvent the DIS Rules, here, Luxshare leaves the court with no doubt:  it is enlisting the Court to bail it out from the arbitration rules for which it bargained.  The Section 1782 framework does not permit such a tactic."  (ECF No. 6, PageID.245; *see also* ECF No. 25, PageID.571, 587.)  In its response and at oral argument, Luxshare explains its decision to file its Section 1782 application before commencing arbitration, elucidating that, with expedited arbitration – and given the Section 1782 process and the possible objections and appeals which may flow therefrom – there may not be enough time to obtain this discovery once the arbitration has commenced, or the arbitration may be stalled by this process.  (ECF No. 13, PageID.335-336; *see also* ECF No. 13-2, ¶¶ 27.)  Then, during the hearing, counsel for Luxshare and the

Court debated the "strategic" nature of Luxshare's application (ECF No. 25, PageID.581, 584-585), prompting the Court to ask Luxshare's counsel, "[w]hy don't we . . . have you start the arbitration [and] wait to see what DIS wants[?][,]" (*id.*, PageID.580). Petitioner's counsel instead urged that "[t]he better strategy here is to make sure that we have all of our evidence and all of our evidence lined up, submitted right when we commence the arbitration." (ECF No. 25, PageID.581; *see also id.*, PageID.584-585, 588-589.) Tellingly, Luxshare's counsel admitted that, "It's unlikely we'd be able to get this level of discovery in the DIS, which is exactly why we're seeking it here[,]" but argued that case law suggests that this is "the exact situation [Section 1782] was designed to help." (ECF No. 25, PageID.586.) The "strategic" use of Section 1782 perhaps tilts against Luxshare on the circumvention factor, arguably supporting an inference of circumvention; then again, lawyers make strategic / tactical decisions all the time within the bounds of the law. (*Compare* ECF No. 25, PageID.589, *with id.*, PageID.595-596.) As Luxshare's attorney further points out, "That doesn't suggest, in any way, that we are somehow subverting the Panel by seeking discovery here in the U.S. first." (ECF No. 25, PageID.589.) It may, or it may not. More troubling, however, is the further admission by Luxshare's counsel that he "would absolutely agree that if [Luxshare] were to seek this discovery, the DIS . . . would not permit it." (ECF No. 25, PageID.580.)

Nevertheless, even if this factor might thus weigh in Respondents' favor, circumvention is only one of the discretionary factors under *Intel*. The Supreme Court has not instructed that evidence of circumventing the foreign tribunal's discovery rules forecloses any and all relief under 1782. This factor alone is not the "end-all, be-all." And while the Court maintains a healthy caution about giving discovery here that may not be readily or at all available under the DIS Arbitration Rules, the Court also notes that they neither foreclose nor prohibit such discovery. In other words, the Court wants to be cautious by not giving Petitioner full-blown Section 1782 discovery for use in a tribunal – DIS Arbitration – that does not *expressly permit* it, but the Court also certainly need not completely bar the request where the rules do not *expressly prohibit* it.

Before moving on to address the fourth and final discretionary *Intel* factor, it is important to consider certain other issues which are specific to this case and/or on which the Court received further briefing.

### 4.    Whether discovery and depositions were part of the MPA?

Respondents offer the declaration of Christoph A. Baus in support of their claim that "discovery and depositions were not part of the agreement[.]" (ECF No. 6-2, PageID.252-254.) Accordingly, the Court asked the parties to brief "case law on whether the contract arbitration clause is prohibitive or should be considered in a Section 1782 analysis." Respondents contend that "the parties' arbitration

provision reflects their intent to prohibit access to § 1782 discovery[.]"  (ECF No. 18, PageID.448-450.)  Luxshare contends that "[t]he case law demonstrates that this arbitration clause in no way prohibits or limits Section 1782 discovery[;]" instead, "the absence of any restrictions in the clause itself or in the DIS Rules on the admissibility or collection of evidence weighs in favor of this avenue of discovery."  (ECF No. 19, PageID.472-475.)  In fact, at the hearing, Luxshare's counsel posited that "[e]vidence collected in connection with a 1782 application is admissible."  (ECF No. 25, PageID.598.)

The Court agrees that "the arbitration clause does not prohibit Section 1782 discovery."  (ECF No. 19, PageID.472.)  First, the clause's plain language does not bar such discovery.  (*See* ECF No. 6-2, PageID.266.)  If the parties had desired to stay away from court on Section 1782 discovery, they could have included appropriate language to that effect; they did not.  (*See* ECF No. 20, PageID.483-484 ¶ 6 [Masser Decl.].)  Or, alternatively, they could have included an express limitation on the ancillary purposes for which a party could seek a court's assistance by including words of limitation, such as "solely to compel arbitration or enforce an arbitration award."  Second, and as mentioned above, the 2018 DIS Arbitration Rules related to "Establishing the Facts," namely Articles 28.1 and 28.2, do not restrict evidence gathering.  (*See* ECF No. 6-2, PageID.280-281; *see*

*also* ECF No. 25, PageID.568-569, 588-589.)  Finally, the Sixth Circuit permits §

1782 discovery for use in private commercial arbitration.  *Abdul*, 939 F.3d at 714.

> **5.**     **Whether the MPA's arbitration clause phrase "without
> recourse to the ordinary courts of law" bars Luxshare from
> seeking this Court's assistance with Section 1782 discovery?**

Section 20.10 of the MPA provides that the agreement "shall be governed by

German law," and further provides as to arbitration:

> All disputes arising under or in connection with this Agreement
> (including any disputes in connection with its validity) shall be
> exclusively and finally settled by three (3) arbitrators in accordance
> with the Arbitration Rules of the German Institution of Arbitration
> e.V. (DIS), including the Supplementary Rules for Expedited
> Proceedings, as applicable from time to time *without recourse to the
> ordinary courts of law*.  The place of the arbitration shall be Munich,
> Germany.  The language of the arbitral proceedings shall be English.
> Documents in the German language shall be translated into the
> English language.

(ECF No. 6-2, PageID.266 (emphasis added); *see also* ECF No. 6-2, PageID.271

[DIS Model Clauses].)

At the conclusion of the hearing, the Court sought supplemental briefing on

the meaning of the contract language "[w]ithout recourse to the ordinary courts of

law[.]"  (ECF No. 25, PageID.599.)  Respondents argue that "the MPA prohibits

'recourse' to a § 1782 petition[.]"  (ECF Nos. 18, PageID.450-452; ECF No. 25,

PageID.561, 567.)  Luxshare contends that the phrase "without recourse to the

ordinary courts of law" does not "prohibit or limit Luxshare's right to obtain

ancillary court relief such as Section 1782 discovery[,]" (ECF No. 19, PageID.475-

478; ECF No. 25, PageID.578). The Court agrees that a 1782 motion seeks ancillary relief, as it is "supplementary" or "subordinate" to the main action. *Ancillary*, <u>Black's Law Dictionary</u> (11th ed. 2019).[3]

On balance, the Court is persuaded by Luxshare's argument. First, as for Respondents' reference to "Luxshare's unexplained delay in commencing an arbitration," (ECF No. 6, PageID.234), Petitioner convincingly argues that "[u]nder German law, Luxshare is well within the statute of limitations for bringing its claim and has until the end of 2021 to file for arbitration[,]" and that "a purported 'delay' in bringing claims does not supply a basis to deny a Section 1782 application[,]" (ECF No. 13, PageID.335). (*See also* ECF No. 13-2, PageID.367 ¶¶ 29-33 [Masser Jan. 8, 2021 Decl.].)

Second, notwithstanding the DIS Arbitration Rules on "Expedited Proceedings" (ECF No. 6-2, PageID.291), or Respondents' "expedited arbitration" argument (*see*, *e.g.*, ECF No. 6, PageID.243-245; ECF No. 14, PageID.380; ECF No. 25, PageID.561, 567), it is not mutually exclusive to undergo expedited arbitration and engage in Section 1782 discovery. As Attorney Masser declares, Section 20.10.2 of the MPA "does not preclude [Luxshare] from seeking interim

---

[3] *See also Suit*, <u>Black's Law Dictionary</u> (11th ed. 2019) (defining "ancillary Suit" as "[a]n action . . . that grows out of and is auxiliary to another suit and is filed *to aid* the primary suit, to enforce a prior judgment, or to impeach a prior decree.") (emphasis added).

relief or pursuing discovery applications in the courts." (ECF No. 13-2, PageID.358 ¶ 14.) *See In re Faiveley Transp. Malmo AB*, 522 F. Supp. 2d 639, 641-642 (S.D.N.Y. 2007) (The injunctive relief being sought "to maintain the status quo during the pendency of [the] arbitration" would not jeopardize the requirement that "'[a]ny dispute arising out of or in connection with this agreement shall be finally settled by arbitration *without recourse to the courts*[,]" (emphasis in original), and "it is undisputed that the arbitration tribunal has not yet been convened, or its members selected, and hence resort to 'any competent judicial authority for *interim or conservatory measures*' is precisely what is contemplated by the very Rules that the parties agreed would govern.") (emphases added, external footnote omitted)). And, Luxshare's pursuit of this relief under 1782 before commencing the arbitration is consistent with a desire to keep the arbitration on an expedited track, once it commences, by obtaining the discovery beforehand. Unlike the Federal Rules of Civil Procedure, which explicitly prohibit discovery without leave of the court until the suit is underway and certain milestones have been passed, the DIS Arbitration Rules do not appear to contain such a prohibition. *See* Fed. R. Civ. P. 26(d)(1).

Finally, as the Court noted at the hearing, Black's Law Dictionary lists alternate definitions of *recourse*: (1) "[t]he act of seeking help or advice[;]" and, (2) "[e]nforcement of, or a method for enforcing, a right." *Recourse*, Black's Law

Dictionary (11th ed. 2019). (ECF No. 25, PageID.578-579.) Upon consideration, the Court concludes – in context and including consideration of what could have been but was not addressed or excluded by the contract language – that the second of these definitions of *recourse* is the one most applicable here. In other words, the phrase "without recourse to the ordinary courts of law" prevents Luxshare from coming to this Court for adjudication *on the merits*, *i.e.,* "a method for enforcing, a right," which Luxshare will do through the yet to be filed arbitration. Nonetheless, in the matter at hand, Luxshare is permitted to come to this Court for ancillary proceedings, such as assistance to compel arbitration to begin, *i.e.*, an "act of seeking help[,]" to procure evidence by compelling Section 1782 discovery, or to enforce an arbitration award. This interpretation is supported by Masser's declaration:[4]

> 4.      [URL omitted] The suggested wording is in pertinent part: "All disputes arising out of or in connection with this contract or its validity shall be finally settled in accordance with the Arbitration Rules of the German Arbitration Institute (DIS) without recourse to the ordinary courts of law." By this standard wording, the parties agree that the main claim - if any - shall be arbitrated, not litigated. The parties using this standard language do not, however, generally exclude the assistance of state courts. German state courts regularly assume jurisdiction, even if such standard wording "without recourse to the ordinary courts of law" is included. ****
>
> 5.      Furthermore, German state courts do assume jurisdiction in spite of an arbitration agreement if the application brought concerns

---

[4] Quoted in substantive part only, for ease on the reader, with supporting citations to German law omitted, as indicated by asterisks.

ancillary or interim proceedings but not the main claim itself. For example, the Higher Regional Court of Koblenz decided that it "is permissible according to the unanimous opinions of legal authorities and jurisprudence" for a party to commence a legal proceeding in a German state court to compel the counter-party to preserve evidence for use in an arbitration. **** This is now expressly set out in German statutory law, sec. 1033 of the Code of Civil Procedure ("CCP"), which provides for the jurisdiction of state courts for interim relief proceedings where the substantive dispute is controlled by an arbitration agreement and is confirmed by decisions of courts throughout Germany. **** The admissibility of interim relief in spite of an arbitration clause is, furthermore, expressed by the German legislature in the reasoning for the revised provisions in CCP. **** Finally, according to some prominent authors, sec. 1033 CCP regarding the right to state court relief for interim, non-substantive proceedings where the parties have an arbitration agreement is mandatory and cannot be excluded even by virtue of an express party agreement to the contrary. ****

6.      Generally, when interpreting an arbitration agreement pursuant to German statutory law and principles, one has to consider the parties' intention at the time of concluding the contract (Sections 133 and 157 German Civil Code). **** Here, the parties chose to include the DIS standard wording, amended by referring to the expedited procedure.  As can be seen from the jurisprudence cited above, such standard wording is not to the exclusion of state court support.  Had the parties wanted to exclude any recourse to the ordinary courts for not only for the main claim for also for everything else, including evidence preservation and other interim relief applications, they would have needed to have expressly agreed on this and expressly stated it.  But, as stated above, some authors suggest that parties cannot make such agreements because it is contrary to public policy.

(ECF No. 20, PageID.482-484 ¶¶ 4-6 [Masser Decl.].)

> **6.      Whether a decision on Luxshare's motion should be stayed pending the Supreme Court's decision in *Servotronics, Inc.*?**

After Petitioner and Respondents filed their supplemental briefs, the

Supreme Court granted the petition for a writ of certiorari in *Servotronics, Inc.*,

2021 WL 1072280, at *1. The question presented is:

> Whether the discretion granted to district courts in 28 U.S.C. §1782(a)
> *to render assistance* in gathering evidence for use in "a foreign or
> international tribunal" encompasses private commercial arbitral
> tribunals, as the Fourth and Sixth Circuits have held, or excludes such
> tribunals without expressing an exclusionary intent, as the Second,
> Fifth, and, in the case below, the Seventh Circuit, have held.

*See* https://www.supremecourt.gov/qp/20-00794qp.pdf (emphasis added).[5]

While Respondents have alerted the Court of this pending matter (ECF No. 22),

Luxshare contends that the Sixth Circuit's decision in *Abdul* remains binding and

that "the grant of certiorari in *Servotronics* should bear no weight on the

Respondents' pending motion to quash[,]" (ECF No. 23). Upon consideration, the

Court declines to stay today's decision. It appears that the Supreme Court will

consider *Servotronics* during the 2021-2022 term. As Luxshare points out, a

decision could be issued as late as June 30, 2022. (ECF No. 23, PageID.497.)

Until then, *Abdul* is binding on this Court. Given the potential length of time

before the Supreme Court issues its decision in *Servotronics*, the fact that there is

---

[5] Interestingly, the question on which certiorari was granted appears to be
consistent with the discussion above concerning the meaning of "recourse" to the
ordinary courts of law, *i.e.*, that 1782 merely provides "assistance" via an ancillary
action to the main action.

binding precedent from the Sixth Circuit, and the need for swifter action and greater certainty within the timeframe for the filing and pursuit of what will be expedited arbitration proceedings in Germany, the Court declines to exercise its discretion to stay the case pending the Supreme Court's decision in *Servotronics*.[6] Furthermore, the limited scope of the discovery which this Court has decided to grant takes the uncertainty of how the Supreme Court will rule on this issue into account – in conjunction with the discretionary *Intel* factors – permitting some, but by no means all of the requested discovery, and recognizing that both DIS and the Supreme Court may give further guidance in the future.

### 7. The final *Intel* factor

### a. Unduly intrusive or burdensome

"[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel Corp.*, 542 U.S. at 265. "In determining whether such requests are intrusive or burdensome, the statute itself instructs that, '[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil

---

[6] Notably, the expedited arbitration rules call for a decision within six months of the case management conference, with the case management conference to be held "in principle within 21 days" after the arbitral tribunal is constituted. (ECF No. 6-2, PageID.280, § 27.2; *id.*, PageID.291 Annex 4, Art. 1.) Since the statute of limitations dictates that this arbitration proceeding be commenced by December 2021, it will be well underway and may well be nearing completion by the time the Supreme Court renders its decision in *Servotronics*.

Procedure.'" *financialright*, 294 F. Supp. 3d at 738-39 (quoting 28 U.S.C. §

1782(a)). "Requests are unduly intrusive and burdensome where they are not

narrowly tailored, request confidential information and appear to be a broad

'fishing expedition' for irrelevant information." *In re Ex Parte Application of*

*Qualcomm Incorporated*, 162 F.Supp.3d 1029, 1043 (N.D. Cal. 2016) (footnote

omitted); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288,

305 (6th Cir. 2007). Respondents and Luxshare dispute whether Luxshare's

subpoenas are overly broad, invasive, or unduly burdensome. (ECF No. 6,

PageID.246-248; ECF No. 13, PageID.349-350.)

### b.    What is the proper scope of discovery?

"Unless otherwise limited by court order, the scope of discovery is as

follows:

> Parties may obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense and proportional to the
> needs of the case, considering the importance of the issues at stake in
> the action, the amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense
> of the proposed discovery outweighs its likely benefit. Information
> within this scope of discovery need not be admissible in evidence to
> be discoverable.

Fed. R. Civ. P. 26(b)(1). *See also In re Sargeant*, 278 F. Supp. 3d at 824 ("while

this Court does not reach consideration of the *Intel* factors, Rule 26(b)

circumscribes the scope of discovery to that which is 'proportional to the needs of the case.'") (quoting Fed. R. Civ. P. 26(b)(1)).

Anticipating the *possibility* that the Court might permit *some* discovery, the Court's February 24, 2021 text-only order also provided: "although preserving ZF's objection that it need not produce anything…: (1) the parties shall undertake another meet and confer conference to discuss what they can jointly agree upon and what they cannot agree upon if the Court were to order production in response to the subpoenas (with reference to the fourth *Intel* factor); and, (2) submit another joint statement reflecting the parties conditional agreements (subject to ZF's preserved objections) and proposals."

On March 19, 2021, the parties reported that they "were unable to reach an agreement regarding the proper scope of discovery that might be permitted pursuant to 28 U.S.C. § 1782." (ECF No. 21, PageID.487 ¶ 3.) They have provided detail about their attempts to negotiate the proper scope of discovery. (ECF No. 21, PageID.487-493.) Respondents' initial, albeit conditional, proposal is for Petitioner "to make requests for specific documents created between May 1, 2017 and August 30, 2017[,]" as "such a proposal is consistent with the scope of any discovery that a DIS Panel would even consider in any future arbitration." (ECF No. 21, PageID.487.) Among other things, Luxshare points out that "the scope of Section 1782 discovery is governed by the Federal Rules of Civil

29

Procedure and not the DIS Rules." (ECF No. 21, PageID.490.) The Court is well aware of this and has considered, in addition to the question of relevance discussed throughout this opinion, each of the proportionality factors listed in Fed. R. Civ. P. 26(b)(1). The rulings which follow attempt to resolve this discovery dispute in a manner that is "proportional to the needs of the case," noting "the importance of the issues at stake in the action," the indisputably large amount in controversy – "nearly a billion dollars pursuant to the terms of" the MPA (ECF No. 1, PageID.9), Luxshare's relative lack of access to much of the relevant information, the seemingly large resources of both sides, and "the importance of the discovery in resolving the issues[.]" Fed. R. Civ. P. 26(b)(1).

Further, upon consideration of the *Intel* factors, taking cognizance of the potential for the Supreme Court to foreclose § 1782 discovery in foreign arbitrations without staying this application in its entirety, and with due deference to the "circumvention" and "unduly intrusive or burdensome" factors, the Court concludes that discovery is warranted, but in a more limited scope than Luxshare requests in its subpoenas.

### i. The temporal scope

First, as for the temporally appropriate period, instead of Respondents' suggestion that it should be cut off upon the signing of the MPA, the Court finds it appropriate to "shorten the temporal scope of all of the document requests to the

16-month period of December 2016 to the April [27, ]2018 closing[,]" as offered

by Luxshare.  (ECF No. 21, PageID.488-489, 491-492.)[7]  Luxshare persuasively

argues that "[t]he period between signing and closing is a critical period in any

fraud case arising from an M&A transaction, and internal ZF US communications

in that period may certainly reflect discussion of the fraud[,]" and that "[e]ven

more fundamentally, the MPA was amended shortly before closing, on April 14,

2018."  (*Id*., PageID.493; *see also* ECF No. 1-2, PageID.44 ¶ 14.)  (*See also* ECF

No. 25, PageID.561, 590-591, 597.)  The Court recognizes from experience that

misrepresentation as to material facts upon which a party to a contract may rely to

its detriment may well occur during post-contract, pre-closing due diligence, as

sometimes occurs in a pre-closing home inspection or the sharing of a business's

financial ledger.

## ii.    Scope of document searches

---

[7] The beginning of this time frame allows for a brief period before the April 2017
commencement of the "Due Diligence Period" and accounts for the fact that the
2016 actual financials were part of the disclosures.  (ECF No. 1-5, PageID.80-81
[Huang Oct. 5, 2020 Decl., ¶¶ 7 & 10].)  It is also what Luxshare requested as the
starting point, albeit not the endpoint specified in its subpoenas, which, in several
places and inconsistent with the instructional section, sought information "between
December 1, 2016 *and the date of this Subpoena*…."  (*See, e.g.,* ECF No. 1-2,
PageID.50, No. 8 (emphasis added); ECF No. 25, PageID.590-591.)  And, while
Respondents take issue with having the closing date as the endpoint, they do not
take issue with the December 2016 starting point.  (ECF No. 21, PageID.489.)

Second, the document searches shall be limited to "(i) the emails of Respondent … Marnat and [one] other custodian[]," and (ii) "documents contained in any shared data drive or other reasonably accessible centrally maintained sources." (ECF No. 21, PageID.491.) The Court will not require Dekker to serve as a document custodian, as he provided an unrebutted declaration, which states:

- To the extent that while working at ZF US I possessed any documents related to the Luxshare transaction or otherwise responsive to the subpoena served on me in this case, I left these documents in the possession of ZF US when I stopped working at ZF US.

- When I left ZF US, I did not retain any documents related to the Luxshare transaction or otherwise responsive to the subpoena . . . .

- I do not have in my possession any documents related to the Luxshare transaction or otherwise responsive to the subpoena served on me in this case.

(ECF No. 6-3, PageID.300, ¶¶ 4-6.) In other words, only *one* document custodian *besides* Marnat will be permitted. Additionally, as both sides suggested (ECF No. 21, PageID.489, 491, 492), the parties shall agree to a list of search terms.

Moreover, while the Court agrees with Respondents that the document requests are overbroad in several respects, Respondents made no effort to convince the Court that the requests are "unduly burdensome," despite alluding to that contention in a mere topic heading. (ECF No. 6, PageID.246.) The Court requires significantly more than that to contest discovery on this basis, as it is "well-settled

law that, '[i]f an objection is interposed based on an alleged undue burden, the objecting party must make 'a specific showing, usually ... by affidavit, of why the demand is unreasonably burdensome.'" *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc*., 364 F. Supp. 3d 758, 766 (E.D. Mich. 2018) (citation omitted). That did not happen here. And, "the fact that it will be either bothersome or burdensome to respond to a discovery request does not necessarily mean that it will be *unduly* so." *State Farm*, 364 F.Supp.3d at 767 (emphasis in original).

Respondents' contention that the requests are *too broad* has greater traction, although the requests are relatively targeted compared to much of the large-scale commercial litigation seen by this Court on a regular basis. For example, Respondents protest that they ought not be required to reveal communications with other bidders or banks concerning the "Big Three" U.S. automakers, *i.e.*, the "Relevant Customers." (ECF No. 6, PageID.247.) The Court disagrees. Those communications could reveal the exchange of information – particularly financial information – that runs contrary to the information provided to and reasonably relied upon by Luxshare, perhaps constituting evidence of fraud. Nonetheless, some of Luxshare's definitions of the key entities and some of Luxshare's requests are unreasonably broad, and the litany style used to define certain common words, such as the word *concerning*, go so far afield as to make no sense. With that in

mind, Luxshare will be required to make the following deletions from its subpoenas: **(a)** "edifying" and "starting" from the definition of "concerning" (*id.*, ¶ 6); **(b)** "affiliates," "predecessors," "successors," "representatives," "agents," "consultants," and "advisors" from the definitions of "FCA," "Ford," and "GM" (*id.*, ¶¶ 9, 11, 12); **(c)** the errant paragraph (*id.*, ¶ 16); **(d)** "including, but not limited to" from Request Nos. 2 & 3; and, **(e)** "or the information contained therein" from Request No. 4. Further, Request No. 6 will be limited to communications concerning the "past or future sales or sales volumes" with respect to the Relevant Customers. In making these adjustments, the Court takes into consideration both the purported procedure in Germany that does not permit "categories of discovery," as Respondents point out (ECF No. 6, PageID.248), and the notion that "courts are counseled to pare down the requests rather than denying [them] outright[,]" as Luxshare advocates (ECF No. 13, PageID.349). *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) (In a § 1782 discovery matter, "[i]f it's asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.").

### iii.    Depositions

Similarly, with respect to depositions, the Court is inclined to give some, but not all. In considering the question of depositions, the Court bears in mind that:

(1) the parties to the MPA contracted for arbitration in Germany, not full-blown U.S. litigation; (2) they agreed to do this on an "expedited," *i.e.*, streamlined basis; (3) Luxshare believes it has "evidence to support [its] claims right now[,]" but just "need[s] that discovery to make sure that [it has] *the strongest possible pleading* when [it] commence[s] the arbitration[,]" (ECF No. 25, PageID.581-582 (emphasis added)); and, (4) there needs to be a balance between the *Intel* Court's concern that nonparties' testimony may be unattainable absent relief under § 1782 *and* the duty of both the subpoenaing party and the Court to "avoid imposing undue burden…on a person subject to the subpoena[,]" Fed. R. Civ. P. 45(d)(1). This last consideration is especially noteworthy where witnesses face the prospect of being dragged into litigation involving their former employer. With all of this in mind, the Court has determined that one deposition is enough. Accordingly, the Court will permit Luxshare – at its own choosing – to take the deposition of either Respondent Gerald Dekker or Respondent Christophe Marnat. It may not take both.

## II.    ORDER

Accordingly, Respondents' motion to quash improper subpoenas (ECF No. 6) is **GRANTED IN PART** and **DENIED IN PART**. Consistent with the foregoing, ZF US and Marnat **SHALL** respond to the respective subpoenas (ECF

Nos. 1-2, 1-3, 1-4) consistent with this opinion by a reasonable deadline to be

mutually worked out by counsel.

**IT IS SO ORDERED.**[8]


Dated:  May 27, 2021

Anthony P. Patti
U.S. MAGISTRATE JUDGE

---

[8] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).