UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUXSHARE, LTD.,

    Petitioner,

v.

ZF AUTOMOTIVE US, INC.,
GERALD DEKKER, and
CHRISTOPHE MARNAT,

    Respondents.

Case No. 2:20-mc-51245
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

---

**ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER GRANTING IN PART AND DENYING IN PART
RESPONDENTS' MOTION TO QUASH [26]**

---

As a result of a business dispute involving hundreds of millions of dollars in potential damages, Luxshare, LTD intends to initiate, by the end of the year, an arbitration proceeding in Munich, Germany against ZF Automotive US, Inc. Luxshare seeks discovery for this foreign proceeding from ZF US and two of its senior officers who all reside in the Eastern District of Michigan. Luxshare has filed an application pursuant to 28 U.S.C. § 1782 seeking to serve subpoenas for the production of documents and testimony. In evaluating Luxshare's request, Magistrate Judge Anthony P. Patti reviewed the initial briefing, conducted an extensive hearing, requested supplemental briefing, thoroughly analyzed all of the relevant factors from the governing case, *see generally Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), and issued a 36-page opinion. Magistrate Judge Patti determined that some discovery was appropriate, but he significantly limited

its scope. Now before the Court are Respondents' objections to Magistrate Judge Patti's order. None of them reveal any legal error or abuse of discretion. The objections are OVERRULED.

I.

In August 2017, Luxshare, LTD purchased two business units from Michigan-based automotive parts supplier and manufacturer ZF Automotive US, Inc. for nearly a billion dollars. (ECF No. 1, PageID.9.) The two businesses were ZF US's Global Body Control Systems business and ZF US's Radio Frequency Electronics business (collectively, the "BCS-RFE Businesses"). (*Id*.) The terms of the deal were set forth in a Master Purchase Agreement. (*Id*.) The deal closed in April 2018.

Luxshare claims that it only recently discovered that, during the due diligence period and prior to the closing on the transaction, ZF US fraudulently concealed certain material facts and developments concerning the significant decline in business relationships with, and expected purchases from, several of the most important customers of the BCS-RFE Businesses (i.e., FCA, Ford, and GM). (*Id*. at PageID.9–10.) This alleged fraud, claims Luxshare, inflated the purchase price it paid for the BCS-RFE Businesses by hundreds of millions of dollars over the amount it would otherwise have paid for them. (*Id*. at PageID.10.)

The parties' Master Purchase Agreement provides that "[a]ll disputes arising under or in connection with this Agreement . . . shall be exclusively and finally settled by three (3) arbitrators in accordance with the Arbitration Rules of the German Institution of Arbitration e.V. (DIS), including the Supplementary Rules for

Expedited Proceedings . . . ." (ECF No. 6-2, PageID.266.) Also, "[t]he place of the arbitration shall be Munich, Germany." (*Id.*)

Luxshare intends to bring claims with a DIS arbitral tribunal to recover for the losses it claims to have suffered as a result of ZF US's alleged wrongful conduct. (ECF No. 1, PageID.10–11.) Luxshare has until the end of 2021 to file for arbitration. (ECF No. 13, PageID.335.)

But prior to doing so, and because the arbitration proceedings will be expedited, Luxshare seeks to obtain discovery from ZF US and two of its senior officers, Gerald Dekker (retired) and Christopher Marnat, pertaining to the concealment of information concerning the lost sales volumes. So on October 16, 2020, Luxshare filed an ex parte Application seeking the Court's permission to obtain this discovery pursuant to 28 U.S.C. § 1782. (ECF No. 1.) Attached to the Application are a subpoena for documents from ZF US and subpoenas duces tecum for the depositions of Dekker and Marnat. (ECF Nos. 1-2, 1-3, 1-4.) This Court granted Luxhare's ex parte application on October 22, 2020. (ECF No. 3.) Luxshare served the § 1782 subpoenas on respondents the next day. (ECF No. 13, PageID.331.)

Respondents then moved to quash (ECF No. 6), which Luxshare opposed (ECF No. 13). The motion was referred to Magistrate Judge Anthony P. Patti. He conducted a hearing and then requested supplemental briefing. Judge Patti ultimately entered an order granting in part and denying in part the motion to quash. (ECF No. 26.) Judge Patti authorized discovery but limited it as follows: document searches in only the emails of Marnat and one other custodian, and documents contained in a centrally

3

maintained shared drive, between December 2016 and April 2018; modifications to certain definitions in the subpoenas; and a deposition of either Marnat or Dekker, but not both. *Id*. Respondents oppose the production of any discovery and thus, have filed timely objections. (ECF No. 27.)

## II.

The parties dispute whether a magistrate judge's ruling on an application brought under 28 U.S.C. § 1782(a) constitutes a nondispositive order requiring plain error review or a dispositive order requiring de novo review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "Neither the Supreme Court nor any circuit court appears to have squarely addressed this issue. Most lower courts, however, have found that such rulings are not dispositive and are therefore subject to review only for clear error." *In re Hulley Enters.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (citing cases). As one court in this Circuit has likewise explained, "[t]he majority of persuasive authority on this topic concludes that a magistrate judge's ruling on a motion for discovery under 28 U.S.C. § 1782(a) is nondispositive." *JSC MCC EuroChem v. Chauhan*, No. 17-00005, 2018 U.S. Dist. LEXIS 138075, at *2 (M.D. Tenn. Aug. 15, 2018) (citing cases).

The Court sees no reason to deviate from this majority view or to treat this matter differently from other discovery disputes. "In a § 1782 proceeding, there is nothing to be done 'on the merits.' Section 1782 empowers a district court to order a person residing within its district to 'give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.' The only issue before the district court is discovery; the underlying litigation rests

4

before a foreign tribunal." *In re Republic of Ecuador*, 735 F.3d 1179, 1182 (10th Cir. 2013). Thus, the Court will uphold Magistrate Judge Patti's order unless it is "clearly erroneous or contrary to law." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

A ruling is "'clearly erroneous' when, although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992) (citation omitted). A legal conclusion is "contrary to law 'when it fails to apply misapplies relevant statutes, case law, or rules of procedure.'" *Ford Motor Co. v. United States*, No. 08-12960, 2009 U.S. Dist. LEXIS 81720, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009) (citation omitted). Relatedly, in deciding discovery disputes, a magistrate judge is entitled to the same broad discretion as a district judge and his order is overruled only upon a finding of an abuse of discretion. *State Farm Mutual Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 703 (E.D. Mich. 2017) *report and recommendation adopted* No. 14-11700, 2017 U.S. Dist. LEXIS 113535, 2017 WL 3116261 (July 21, 2017); *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 209 (6th Cir. 1995). An abuse of discretion exists when the court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

**III.**

The purpose of an application under 28 U.S.C. § 1782 is to obtain federal-court assistance in gathering evidence and testimony for use in foreign tribunals. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). To invoke § 1782, an applicant must first meet certain threshold criteria: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding before a foreign or international tribunal"; and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a).

If these statutory prerequisites are met, the district court is authorized, but not required, to permit discovery. *Intel.*, 542 U.S. at 264. In other words, § 1782 "leaves the issuance of an appropriate order to the discretion of the court." *Id.* at 260–61.) The following (*Intel*) factors guide the Court's exercise of its discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the agency abroad to federal-court judicial assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *Id.* at 264−65. The decision to grant an application is made in light of the "twin aims" of § 1782: "providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252.

The thrust of Respondents' objections involve Magistrate Judge Patti's rulings on the *Intel* factors. Respondents believe that "each discretionary factor weighs in favor of quashing the Section 1782 Subpoenas in their entirety." (ECF No. 27, PageID.651.) They also contend that his ruling does not achieve either of the "twin aims" of § 1782. Respondents do not object to Judge Patti's substantive rulings on the statutory prerequisites of § 1782. But they do object to his refusal to stay the application pending a ruling in *Servotronics, Inc. v. Rolls-Royce PLC*, 141 S. Ct. 1684 (2021) (cert. granted), because the Supreme Court might determine that § 1782 does not apply to a foreign, private, commercial arbitration. (*Id.*) The Court will address the objections in turn.

### A.

The first discretionary factor to be considered is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. If so, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id*. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id*. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*.

Here, the contemplated German arbitration will be against ZF US and not the individuals Gerald Dekker and Christophe Marnat. And it is ZF US and not Dekker

and Marnat that have possession of the documents requested in the subpoenas. Thus, Magistrate Judge Patti found the participation factor "was mixed" and warranted "permitting some discovery as to the non-participants (Respondents Dekker and Marnat) but curtailing discovery as to the intended participant." (ECF No. 26, PageID.613.) Respondents claim this is error. (ECF No. 27, PageID.652.) "If neither Mr. Dekker nor Mr. Marnat have any responsive documents in their individual possession, and those documents are instead held by ZF US," say Respondents, "then this is not a 'mixed factor' at all: the discovery can only come from an entity that is a party to the foreign arbitration." (*Id.* at PageID.654.)

But this is not dispositive. Some courts are "not persuaded that *Intel* precludes § 1782 discovery of parties participating in the underlying international proceeding. Section 1782 aid is not foreclosed just because the need for such aid may not be as readily apparent." *In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12 MC 221 RPP, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012).

"Although the identity of the party is instructive, the analysis turns on whether the evidence is 'unobtainable absent § 1782(a) aid.'" *Republic of Kaz. v. Lawler*, No. CV-20-00090, 2020 U.S. Dist. LEXIS 12694, at *10 (D. Az. Jan. 27, 2020) (citing *Intel*, 542 U.S. at 264); *see also In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 14-cv-00797, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) ("Although the case law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is

8

obtainable through the foreign proceeding."); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016) ("[W]hether an entity is a participant . . . is not dispositive; *Intel* puts it in the context of whether the foreign tribunal has the authority to order an entity to produce the disputed evidence.").

Luxshare provided affidavits from Anna Masser, its German counsel who will be handling the DIS arbitration. (ECF No. 1-6; ECF No. 13-2.) She supports Luxshare's position that the DIS Rules have no mechanism to compel discovery in the United States. (*See, e.g.,* ECF No. 1-6, PageID.95.) Masser explains that the subpoenaed documents and witnesses are all located in the United States, and thus, for both parties and non-parties alike, the DIS tribunal will have no authority to compel the production of documents and deposition testimony sought. (ECF No. 13-2, PageID.364–365.) This supports Magistrate Judge Patti's finding that this factor is "mixed." *See In re Application for Discovery Pursuant to 28 U.S.C. § 1782*, 19-MC-0102, 2019 WL 4110442, at *2 (N.D. Ohio Aug. 29, 2019) (weighing the first *Intel* factor in favor of granting the application even when the respondents were parties to an Italian proceeding because, as residents of Ohio, the respondents fell outside the authority of the Italian courts to compel compliance with domestic discovery).

Moreover, there is no dispute that the individual Respondents will not be participants in the foreign proceeding and thus, the first *Intel* factor weighs in favor of permitting one of their depositions.

There is simply no legal error or abuse of discretion in Magistrate Judge Patti's weighing of the first *Intel* factor.

**B.**

Under the second discretionary *Intel* factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Prior to evaluating this factor, Magistrate Judge Patti asked the parties for supplemental briefing on the issue of DIS's receptivity to § 1782 discovery. (ECF No. 25, PageID.600.) He found the parties to be "at odds." (ECF No. 26, PageID.615.)

So Judge Patti reviewed the DIS rules, the parties' competing declarations, and the relevant case law. He found that the 2018 DIS Arbitration Rules related to "Establishing the Facts," namely Articles 28.1 and 28.2, "do not restrict evidence gathering." (ECF No. 26, PageID.613.) More specifically, Article 28.2 provides that the tribunal "may, inter alia, on its own initiative, appoint experts, examine fact witnesses other than those called by the parties, and order any party to produce or make available any documents or electronically stored data." (*Id.*) An entire section of the declaration of Luxshare's German counsel is devoted to explaining that "German Courts Admit Evidence Obtained By Way Of U.S. Discovery Applications[]." (ECF No. 13-2, PageID.359–362). Considering this evidence, and "without authoritative proof that the DIS would reject Section 1782 discovery," Magistrate Judge Patti "assume[d] that the DIS would receive it if it were obtained and presented." (ECF No. 26, PageID.616.) He ultimately found that "while DIS does not

provide a generous ration of discovery, it appears receptive to whatever evidence a party wants to put in front of it, and it does not impede proof-gathering." (*Id.*)

Respondents disagree. They first point to case law that has "cast aside" the notion that the receptivity factor requires a respondent to provide "authoritative proof" of non-receptivity.

But other courts have taken the opposite view. *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 17-4269, 2019 U.S. Dist. LEXIS 5632, at *20–21 (D.N.J. Jan. 10, 2019) ("In evaluating a foreign tribunal's receptivity, the court considers 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.'" (quotation omitted); *In re O'Keeffe*, 646 F. App'x 263, 265–66 (3d Cir. 2016) (finding that the district court did not abuse its discretion in requiring "authoritative proof that the foreign court would reject the evidence obtained with the aid of Section 1782" on a motion to quash a subpoena). Indeed, another court in this District recently stated that "[t]he majority of opinions from other circuits indicate that the second *Intel* factor weighs against a section 1782 application only if there is 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782.'" *In re Ex Parte Caterpillar Inc.*, 2020 U.S. Dist. LEXIS 70913, at *31–33 (M.D. Tenn. Apr. 21, 2020) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *see also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (noting that the party opposing discovery "ha[s] not pointed to any judicial, executive or legislative declaration that clearly demonstrates that allowing discovery in this case

11

would offend Ecuadorian judicial norms" (internal citation and quotations omitted)). Also, "District courts have . . .been 'instructed to tread lightly and heed only clear statements by foreign tribunals that they would not welcome § 1782 assistance.'" *Caterpillar*, 2020 U.S. Dist. LEXIS 70913, at *32 (quoting *In re Porsche Automobile Holding SE*, No. 19-MC-91129, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019)).

After evaluating the record, Judge Patti found no definitive proof that the DIS panel would be unreceptive to evidence derived from Luxshare's section 1782 application. There is no legal error in his ruling. He reasonably relied on the DIS rules and Masser's declarations. So there is no abuse of discretion either.

Respondents next contend that the magistrate judge should have found the receptivity factored weighed against discovery because Luxshare has yet to commence the arbitration in Germany and thus, cannot demonstrate that the DIS panel would find the discovery useful. Respondents cite case law in support.

But again, there is case law supporting the opposite view. *See, e.g., In re Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1303 (S.D. Fla. 2012) ("Section 1782 may authorize and encourage judicial assistance even if the foreign proceeding has not commenced or advanced because '§ 1782 is not limited to proceedings that are pending.'" (citation omitted)).

And *Intel* rejected the view that a pending proceeding before a foreign tribunal was necessary for § 1782 discovery—it required only that the proceeding be "within reasonable contemplation." 542 U.S. at 259. So it must be that that the district courts can do precisely what Judge Patti did here—review the rules of the foreign arbitration

12

panel and declarations from German lawyers to try to discern the panel's receptivity to the requested discovery.

The Court cannot say that the magistrate judge's weighing of the discretionary receptivity factor in Luxshare's favor is contrary to law or clearly erroneous.

## C.

Respondents next focus on Luxshare's admissions that they are seeking § 1782 discovery because "[i]t is unlikely we'd be able to get this level of discovery in the DIS, which is exactly why we're seeking it here" and that "if [Luxshare] were to seek this discovery, the DIS . . . would not permit it." (ECF No. 27, PageID.658.) These admissions, say Respondents, are the "essence of circumvention" of foreign proof-gathering restrictions and thus, this *Intel* should weigh in their favor. (*Id.* at PageID.659.)

Judge Patti, too, expressed concerns about these admissions. And after considering them, the declarations from both parties' German law experts concerning the scope of DIS discovery, and some relevant case law, found this factor to be "mixed." (ECF No. 26, PageID.621.) He recognized that most foreign legal systems do not embrace the breadth and scope of American civil discovery. (*Id.* at PageID.617.) But he was also persuaded that § 1782 discovery is not prohibited under German law or by DIS Rules. (*Id.* at 620.) As Judge Patti thoughtfully explained: "while the Court maintains a healthy caution about giving discovery here that may not be readily or at all available under the DIS Arbitration Rules, the Court also notes that they neither foreclose nor prohibit such discovery. In other words, the Court wants to be

13

cautious by not giving Petitioner full-blown Section 1782 discovery for use in a tribunal—DIS Arbitration—that does not *expressly permit* it, but the Court also certainly need not completely bar the request where the rules do not *expressly prohibit* it." (ECF No. 26, PageID.622 (emphasis in original).)

Respondents say this is error. They rely on a number of district court opinions that they believe "confirm[] that courts closely guard against attempts to use § 1782 to evade foreign proof-gathering rules." (ECF No. 27, PageID.659.)

But again, there is competing case law. And this Court finds persuasive the reasoning from another court in this Circuit that "a section 1782 applicant does not circumvent a foreign court's purview merely by seeking discovery that would not be available in that jurisdiction." *In re Ex Parte Caterpillar Inc.*, 2020 U.S. Dist. LEXIS 70913, at *34–35 (M.D. Tenn. Apr. 21, 2020); s*ee also Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (holding that because section 1782 contains no foreign-discoverability requirement, "the availability of the discovery in the foreign proceeding should not be afforded undue weight"). "It is in fact well within a district court's authority to grant 'broader discovery under § 1782 than what might be permitted in the foreign tribunal.'" *Id*. (quoting *In re Gorsoan Ltd.*, — F. Supp. 3d. —, 2020 WL 409729, at *8 (S.D.N.Y. Jan. 24, 2020)). And this policy "makes logical sense" given that the DIS tribunal will ultimately "serve as gatekeeper as to any evidence derived from [Luxhare's] subpoenas." *Id*. at *35 (citing *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 698 (3d Cir. 2018); *see also In re Biomet,* 742 F. App.'x at 698 (noting that despite granting a section 1782 application,

14

"the German court retains the authority to disregard irrelevant or cumulative evidence, or even to conclude that it will not admit any of the submissions")).

Absent a more compelling showing by Respondents that the discovery sought by Luxshare would be prohibited by the German arbitral tribunal, the Court cannot say that the magistrate judge's weighing of this discretionary *Intel* factor is contrary to law or clearly erroneous.

**D.**

The fourth *Intel* factor concerns the scope of the discovery requests. Respondents even take issue with Magistrate Judge Patti's efforts to scale back the scope of the subpoenas.

First, say respondents, "there is no permissible scope for a subpoena that fails the first three discretionary factors." (ECF No. 27, PageID.662.) But, for the well-supported reasons provided by the magistrate judge and, as set forth above, Luxshare's requests do not fail the first three discretionary factors.

Next, respondents contend that the magistrate judge's decision fails to satisfy the "twin aims" of § 1782, which are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252. Respondents are most upset with Magistrate Judge Patti's finding that he "need not wait to see what DIS is going to do, because 'the Panel has the authority to admit evidence as it sees fit,' and it is 'in the best position to make those evidentiary determinations.'" (ECF No. 27, PageID.662.)

But the Court fails to see how allowing limited discovery now of information located in this District, that will help keep the arbitration on an expedited track once it commences, and then permitting DIS, with its superior knowledge of foreign law and procedure, to serve as the ultimate evidentiary gate-keeper, is inefficient for the participants. And, as pointed out by Luxshare, "the grant of Section 1782 [discovery] serves as a 'generous example' to encourage foreign countries to provide similar means of assistance to U.S. litigants." (ECF No. 28, PageID.698–699 (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011)).) Thus, the "twin aims" of section 1782 do not appear to be in any peril from the magistrate judge's ruling.

Respondents also suggest that Magistrate Judge Patti's ruling somehow contravenes the parties' intent in contracting for the German arbitration. But Judge Patti was cognizant of this concern. He requested and then carefully considered the parties' supplemental briefing on this issue. He aptly noted that the parties' arbitration provision "could have included appropriate language prohibiting Section 1782 discovery," but did not, and he reiterated that "the 2018 DIS Arbitration Rules . . . do not restrict evidence gathering." (ECF No. 26, PageID.623.) Moreover, the discovery being sought bears on key issues at stake in the impending arbitration, that being Respondents' knowledge that Ford, GM, and FCA were reducing or eliminating their business with the ZF US business units being purchased by Luxshare and Respondents' decision to not disclose this information to Luxshare. Also, as Judge Patti found, Luxshare's pursuit of this Section 1782 discovery now "is

16

consistent with a desire to keep the arbitration on an expedited track, once it commences, by obtaining the discovery beforehand." (ECF No. 26, PageID.626.) So again, the Court fails to see how Judge Patti's allowance of limited, relevant discovery upsets the efficiency Respondents believe they bargained for by expressly electing for dispute resolution by the DIS.

In sum, there is nothing about the "twin aims" of § 1782 that warrants a reversal of Magistrate Judge Patti's ruling.

**E.**

Respondents' final objection concerns Magistrate Judge Patti's denial of their request to stay these proceedings.

The Supreme Court is presently considering whether the discretion granted to district courts in 28 U.S.C. § 1782(a) to render assistance in gathering evidence for use in "a foreign or international tribunal" encompasses or excludes private, commercial arbitral tribunals. *See Servotronics, Inc. v. Rolls-Royce PLC*, 141 S. Ct. 1684 (2021). This will resolve a circuit split. The Sixth Circuit has held that Section 1782 discovery is available for private, foreign arbitrations. *Abdul Latif Jameel Trans. Co. Ltd. v. FedEx Corp.*, 939 F.3d 710, 730 (6th Cir. 2019). Of course, this Court remains bound by *Abdul* until the Supreme Court says otherwise. If, however, the Supreme Court determines that foreign private arbitrations are not subject to § 1782, then Luxshare's application will not satisfy the statutory prerequisites. Thus, say Respondents, it was error for Magistrate Judge Patti to refuse to stay this case pending a ruling in *Servtronics*.

17

While this is easy to say, it is much harder to prove. A district court has "broad discretion . . . as an incident to [its] power to control its own docket" to stay some or all of pending proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Indeed, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The court "must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).

As he did in weighing the *Intel* factors, Magistrate Judge Patti gave thoughtful consideration to the stay issue:

> Given the potential length of time before the Supreme Court issues its decision in *Servotronics*, the fact that there is binding precedent from the Sixth Circuit, and the need for swifter action and greater certainty within the timeframe for the filing and pursuit of what will be expedited arbitration proceedings in Germany, the Court declines to exercise its discretion to stay the case pending the Supreme Court's decision in *Servotronics*.
>
> Furthermore, the limited scope of the discovery which this Court has decided to grant takes the uncertainty of how the Supreme Court will rule on this issue into account—in conjunction with the discretionary *Intel* factors—permitting some, but by no means all of the requested discovery, and recognizing that both DIS and the Supreme Court may give further guidance in the future.

(ECF No. 26, PageID.629–630.)

18

There is simply no merit in any contention that this ruling is an abuse of discretion or in any other way erroneous.

IV.

For all of these reasons, Respondents' objections to Magistrate Judge Patti's order on their motion to quash are OVERRULED.

SO ORDERED.

Dated: July 1, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE